UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TIMOTHY PROSSER, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | )   Case number 4:08cv0516 TCM |
| | ) |
| JEFF NORMAN and | ) |
| CHRIS KOSTER, Attorney | ) |
| General for the State of Missouri,[1] | ) |
| | ) |
| Respondents. | ) |

MEMORANDUM AND ORDER

Timothy Prosser (Petitioner), a Missouri prisoner, petitions the United States District

Court for the Eastern District of Missouri for federal habeas corpus relief from a 2004

conviction after a jury trial.[2]  See 28 U.S.C. § 2254.  Respondents filed a Response to the

_____

[1]  At the time he filed this action, Petitioner was serving the first (seven year) term of two consecutive terms of imprisonment to which he was sentenced, and would in the future serve the second consecutive (four year) term of imprisonment.  Because at the time he filed this action, Petitioner was challenging a sentence he was going to serve in the future, the Attorney General of Missouri, Chris Koster, will be added as a proper party respondent.  See Rule 2(b), Rules Governing Section 2254 Cases in the United States District Courts.

In his petition, Petitioner reports he has three consecutive sentences (life without parole, seven years, and four years) to serve upon the completion of the sentences challenged in this habeas proceeding.  (See Pet. at 13-14 [Doc. 1 at 12-13].)

[2]  As attachments to his habeas petition, Petitioner provided copies of:

(a)     Petitioner's motion for new trial [Doc. 1-2 at 2-9];

(b)     Petitioner's brief on direct appeal [id. at 10-62];

(c)     the Missouri Court of Appeals' decision in the direct appeal [id. at 64-76];

(d)     Petitioner's post-conviction motion and motion to recuse [id. at 77-166], including two affidavits [id. at 151-55], a motion for disclosure  [id. at 160-66], requests for hearing on that motion for disclosure [id. at 158-59], the state trial court's denial of that motion for disclosure [id. at 157], the November 14, 2003, deposition of Todd Parker [Doc. 1-3 at 2-12], the February 18, 2004, deposition

Order to Show Cause Why a Writ of Habeas Corpus Should Not Issue (Response), including

copies of the record in the state court,[3] and Petitioner filed a reply.  Petitioner also filed a

_____

> of Parker [id. at 14-25], several newspaper articles [id. at 27]; and several pages from Missouri Case.net [id. at 28-37];

(e)     Petitioner's amended post-conviction motion, including Petitioner's pro se post-conviction motion, motion to recuse, and attachments [id. at 38-158],

(f)     the Notice of Appeal and Civil Cover Sheet for Petitioner's Post-Conviction Appeal [id. at 159-61],

(g)     the motion court's denial of both Petitioner's request for an evidentiary hearing and his motions for post-conviction relief conviction relief [id. at 162-69],

(h)     Petitioner's motion to appeal in forma pauperis [id. at 170-71],

(i)     the order of the Missouri Court of Appeals permitting Petitioner's late appeal in the post-conviction proceeding [id. at 172],

(j)     Petitioner's brief in his post-conviction appeal [id. at 173-225],

(k)     the Missouri Court of Appeals' notice that the mandate was issued in Petitioner's post-conviction appeal [id. at 226], and

(l)     Petitioner's pro se "Verified Petition for Plain Error Review Based upon Infringement of Federal Constitutional Rights," along with attachments, filed in the motion court  [id. at 227-68].

Respondents have not presented an objection to these materials.  The Court will refer to these materials only to the extent they are part of the state court record, are not part of the exhibits Respondents filed in this habeas proceeding, and are relevant to this Court's discussion.

[3] This Court will consider all of the exhibits Respondents filed [Doc. 14], except for Exhibit F, as part of the record in the underlying state court criminal trial and post-conviction proceedings.  Exhibit F is a "Transcript of Defendant's Motion to Suppress" which was heard by the Honorable Kenneth W. Pratte, of the Ste. Genevieve County Circuit Court, on August 17, 2004, in State v. Timothy M. Prosser, Case No. 03CR616941.  The case number for the underlying trial court proceedings pertaining to this federal habeas proceeding, however, is 02CR614960 or 02CR614960-02; and the trial court proceedings under that case number concluded before August 2004 after the conclusion of Petitioner's jury trial, before Judge Pratte, in March 2004, Petitioner's sentencing on May 20, 2004, and Petitioner's filing of a notice of direct appeal on May 27, 2004.  (See Docket Sheet and Notice of Appeal, Tr. Legal File, Resp't Ex. C, at 3-9 and 144-46.)  To clarify the record, this Court has not read or taken into consideration any aspect of Respondents' Exhibit F in resolving this federal habeas proceeding.

supplemental claim [Doc. 18], with attachments.[4]  Respondents filed a response, including

attachments, to that supplemental claim,[5] and Petitioner filed a reply supporting it.[6]  Petitioner

also requests the appointment of counsel [Doc. 27; Doc. 28 at 3].

Finding the federal habeas petition and supplemental claim present five grounds for

relief and concluding that these grounds are either not cognizable or are procedurally barred,

the petition will be denied without further proceedings.  Petitioner's motion for appointment

of counsel will also be denied.

### Background

Petitioner was charged in the Ste. Genevieve County Circuit Court with two felonies

occurring on November 20, 2002:  possession of methamphetamine, in violation of Mo. Rev.

Stat. § 195.202, and unlawful possession of drug paraphernalia with intent to manufacture

methamphetamine, in violation of Mo. Rev. Stat. § 195.233.[7]  (Page 1 of the Docket Sheet for

the Associate Division of the Ste. Genevieve Circuit Court [Resp't Ex. D at 1]; Information,

Tr. Legal File, Resp't Ex. C, at 10-11.)

---

[4]  The attachments to Petitioner's supplemental habeas claim consist of copies of four warrants
from the Ste. Genevieve County Circuit Court for Petitioner's arrest due to his failure to appear, dated
October 17, 2002, and identified by Petitioner as Exhibits A through D [Doc. 18-2 at 1-8], as well as
copies of the Ste. Genevieve Circuit Court docket sheets related to each of those arrest warrants,
identified by Petitioner as Exhibits E through H [id. at 9-21].

[5] In support of their response to the supplemental claim, Respondents provided as an attachment
copies of four complaints and summonses issued by the Ste. Genevieve County Sheriff to Petitioner on
July 18, 2002, for various motor vehicle offenses, and identified as Respondents' Ex. O [Doc. 26-1].

[6]  Attached to Petitioner's reply in support of the supplemental claim are eight pages of docket
sheets from the Ste. Genevieve County Circuit Court [Doc. 28-1 at 1-8].

[7]  During trial the court granted leave to amend Count II by interlineation to delete several items
that had been listed as drug paraphernalia in Petitioner's possession on November 20, 2002.  (Trial Tr.,
Resp't Ex. G, at 279; Information, Tr. Legal File, Resp't Ex. C, at 10-11.)

Petitioner filed a motion to suppress all evidence obtained as a result of a search of Petitioner's residence on November 20, 2002.  (Id. at 2; Pet'r Mot. Suppress, filed Jan. 6, 2003, Tr. Legal File, Resp't Ex. C, at 12-23; see also id. at 24-34, 39-41.)  After a hearing, the Honorable Raymond M. Weber ("the associate circuit judge") overruled that motion.  (Apr. 15, 2003, entry at page 3 of the Docket Sheet for the Associate Division of the Ste. Genevieve Circuit Court [Resp't Ex. D at 3; Resp't Ex. C at 1]; Mem. for Clerk,  Resp't Ex. D at 4.)  The associate circuit judge also transferred the case to the Circuit Court of Ste. Genevieve upon finding probable cause to believe that a felony had been committed by Petitioner.  (See Page 3 of  the Docket Sheet for the Associate Division of the Ste. Genevieve Circuit Court [Resp't Ex. D].)  The Honorable Kenneth W. Pratte ("trial judge") then presided over the case, which was transferred to the Circuit Court for Madison County ("trial court") upon the granting of Petitioner's motion for change of venue.  (Tr. Legal File, Resp't Ex. C, at 43.)

Petitioner filed a second motion to suppress.  (Pet'r Mot. Suppress, filed Feb. 17, 2004, Tr. Legal File, Resp't Ex. C, at 66-78).  The State filed an objection to a hearing on this second motion to suppress arguing in relevant part that evidence had been heard and briefs had been submitted on the issues when the first motion to suppress was pending before the associate circuit judge, and the first motion to suppress had been overruled by that judge.  (Objection to Hr'g Mot. Suppress, Tr. Legal File, Resp't Ex. C at 79-80.)  The trial judge "decline[d] to hear [Petitioner]'s Motion to Suppress as it has already been ruled upon by another judge."  (Order, filed Mar. 18, 2004, Tr. Legal File, Resp't Ex. C, at 110.)

Petitioner also filed motions to compel seeking a court order compelling Todd Parker

-4-

("confidential informant" or "informant") to attend and answer questions at a deposition.[8] (Mots. Compel, filed Nov. 24, 2003, and Mar. 15, 2004, Tr. Legal File, Resp't Ex. C, at 64-65 and 107-09.)  The first motion to compel was withdrawn and the second motion to compel was overruled.  (Orders, dated Dec. 18, 2003 and Mar. 18, 2004, Tr. Docket Sheet, Tr. Legal File, Resp't Ex. C, at 6 and 7; Order, dated Mar. 18, 2004, id., at 110.)

At trial, in addition to introducing numerous exhibits (see, e.g., copies of exhibits at Resp't Ex. E), the State presented the testimony of

-- David Oder, an officer with the Mineral Area Drug Task Force of the Missouri State Highway Patrol, who participated in the arrest of Petitioner and the search of Petitioner's residence on November 20, 2002 (Trial Tr., Resp't Ex. G, at 98-169);

-- Kenneth Schulte, a trooper with the Missouri State Highway Patrol who participated in the arrest of Petitioner and search of Petitioner's residence on November 20, 2002 (id. at 169-97);

-- Deborah Oliveras, a criminalist with the Missouri State Highway Patrol who tested the substances found at Petitioner's residence on November 20, 2002 (id. at 198-216); and, in rebuttal,

-- Timothy Craig, who was a deputy sheriff with the Ste. Genevieve County Sheriff's Department involved in the searches of Petitioner's residence on November 20, 2002, and on December 12, 2003 (id. at 266-77).

Petitioner testified (id. at 219-43) and presented the testimony of Patrick Prosser,

---

[8] Petitioner also filed a motion to compel others to disclose their knowledge of the informant's participation in a "controlled delivery" at Petitioner's residence on November 19, 2002.  (See Mot. Compel, Tr. Legal File, Resp't Ex. C, at 55-56.)   The trial court denied this motion to compel as moot. (Order, dated Oct. 16, 2003, id. at 63.)

Petitioner's father (id. at 244-56); Kathy Bollinger, Petitioner's sister (id. at 256-60); and Eric Bennett, who was an officer with the Mineral Area Drug Task Force who participated in the arrest of Petitioner and search of Petitioner's residence on November 20, 2002 (id. at 260-65).

The trial court overruled Petitioner's motions for judgment of acquittal at the close of the State's evidence and at the close of all the evidence (id. at 219, 277-78); and the jury found Petitioner guilty of the charged offenses (Verdicts, Tr. Legal File, Resp't Ex. C, at 131-32).

After denying Petitioner's motion for new trial, the trial court sentenced Petitioner to consecutive terms of imprisonment consisting of seven years for possession of methamphetamine and four years for unlawful possession of drug paraphernalia with intent to manufacture methamphetamine.  (Trial Tr., Resp't Ex. G, at 301, 305-06; Sentence and Judgment, Tr. Legal File, Resp't Ex. C, at 141-43.)

On direct appeal, Petitioner raised three points.  First, Petitioner argued his Fourth and Fourteenth Amendment rights to be free from unreasonable searches and seizures were violated because the affidavits used to obtain the search warrant for his residence included false statements by the affiants and did not establish probable cause that contraband or evidence of a crime would be found in his residence.  (Pet'r Br., Resp't Ex. A, at 18, 22.)  Second, Petitioner urged that his Fourth and Fourteenth Amendment rights to due process and to be free from illegal searches and seizures were violated by the trial court's failure to conduct a hearing on the second motion to suppress.  (Id. at 19, 33.)  Finally, in his third point, Petitioner contended that his Fifth and Fourteenth Amendment rights to due process, to a fair trial, and to be tried only for the charged offenses were violated when the trial court allowed the State to present rebuttal evidence regarding evidence of a separate alleged offense, specifically evidence regarding Petitioner's subsequent December 2003 arrest on other methamphetamine

charges.  (Id. at 21, 40.)

The Missouri Court of Appeals for the Eastern District of Missouri affirmed Petitioner's conviction in a summary per curiam order, dated October 11, 2005, supported by a memorandum explaining the decision that was sent only to the parties.  (Order and Mem. Supplementing Order Affirming J. Pursuant to Rule 30.25(b), Resp't Ex. H.)  The state appellate court noted Petitioner did not challenge the sufficiency of the evidence and, viewing the evidence adduced at trial in the light most favorable to the verdict, found:

> On November 19, 2002, after receiving information of possible methamphetamine production and in possession of several warrants for [Petitioner]'s arrest, officers with the Mineral Area Drug Task Force arrived at [Petitioner]'s residence, which consisted of a camping trailer adjacent to a basement foundation that had been covered with a roof and converted into a shed.
>
> When the officers arrived at [Petitioner]'s property, they observed outside the residence a small glass jar containing what appeared to be "pill crush," a box of several blister packs of pseudoephedrine, cans of acetone, Coleman fuel, starting fluid and a butane torch.  Also outside the residence, the officers observed propane tanks and a blue tote containing a jar of muriatic acid and what appeared to be more "pill crush."  The officers noted a strong, ether-like chemical odor coming from the residence.  The officers knocked on the front door of the residence.  [Petitioner] answered the door and refused to consent to a search of his residence.  [Petitioner] was placed under arrest for the outstanding warrants.  A pat down of [Petitioner] revealed over $2,800 in cash in [Petitioner]'s pocket.  As a few of the officers did a quick walk-through of the residence to secure the premises, two officers left [Petitioner]'s property to obtain a search warrant.  On November 20, 2002, after obtaining the warrant, Task Force officers along with a Missouri Highway Patrol trooper, and a Ste. Genevieve County Sheriff's deputy conducted a search of [Petitioner]'s property. The search revealed numerous items that could be used in the manufacture of methamphetamine including: numerous bottles or jars containing liquids; a coffee pot containing a two-layer liquid; a coffee filter containing a powdery substance on top of a Mason jar; a jar containing a pinkish powder; a pharmacy bottle containing a bag of white powder; a glass pan containing a bag of white powder; a glass jar containing white powder; a plastic bag on the kitchen table

containing white powder; a bag of white powder in a jacket in the bedroom; a jar containing stripped matchbooks; two bottles of iodine crystals; an air tank with a modified valve that could be used as an anhydrous tank; a pipe used to smoke methamphetamine with residue inside; a scale; rubber tubing; matches; razor blades; several firearms; and a tank sprayer that could be used as a hydrogen chloride generator.

The officers seized the items.  Samples seized tested positive for either methamphetamine or pseudoephedrine. [Petitioner] was charged with one count of felonious possession of a controlled substance and one count of felonious possession of drug paraphernalia with intent to manufacture methamphetamine.

(Mem. Supplementing Order Affirming J. Pursuant to Rule 30.25(b), Resp't Ex. H, at 2-3.) The Missouri Court of Appeals also characterized Petitioner's second motion to suppress as "alleging the same basis for challenging the warrant as the first motion."  (Id. at 4.)

In addressing Petitioner's first point, that the trial court erroneously "overrul[ed] his objection to the introduction of evidence seized during the execution of [the November 20, 2002] search warrant, because the warrant was based on false information provided by the police" (id.) and was not supported by probable cause, the Missouri Court of Appeals stated:

Probable cause for issuing a warrant is to be determined by looking to the totality of the circumstances surrounding the warrant.  State v. Miller, 815 S.W.2d 28, 31-32 (Mo. [Ct.] App. . . . 1991).  The issuing magistrate's job is to "make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."  Id. at 32, quoting, Illinois v. Gates, 462 U.S. 213, 238 (1983).  We defer to the issuing judge's determination of probable cause, and will reverse only upon a showing of abuse of discretion.  Miller, 815 S.W.2d at 32.

Here, the warrant allowing officers to search [Petitioner]'s property was based upon affidavits submitted by Officers Eric Bennett and David Oder.  Both affidavits alleged the following:

Outside the trailer we saw a jar of what appeared to be crushed

pills on a central air conditioning unit on the rear of the trailer. We saw a box with several blister packs of pseudoephedrine in a trash pile next to the trailer.  Next to the box were several empty cans of Coleman fuel.  Near the trailer we also observed several propane cylinders.  We also observed near the trailer a blue tote containing two cans of Coleman fuel, a jar of muriatic acid, and a large Rubbermaid container of what appeared to be crushed pills.  Also outside the trailer was a hydrogen chloride gas generator and a can of acetone.  There was a chemical odor in the entire area.

Both officers also stated that from their training, they were aware the items observed were commonly used in the manufacture of methamphetamine. [Petitioner] alleges the affidavits do not establish probable cause because some items mentioned in the affidavit were found in a basement outbuilding and other items listed as being outside the trailer were not seized by the officers.

A defendant attacking a search warrant on the basis of misrepresentation must make a substantial showing that the affiant knowingly, intentionally, or with reckless disregard for the truth, included a false statement in the affidavit and that without the false statement the remaining information does not establish probable cause.  State v. McCullum, 63 S.W.3d 242, 257 (Mo. [Ct.] App. . . . 2001), citing Franks v. Delaware, 438 U.S. 154, 155-56 (1978).  Moreover, a defendant must demonstrate that without the allegedly false information, the remaining information was insufficient to establish probable cause.  Id.

Here, [Petitioner] alleges the evidence of muriatic acid and the Rubbermaid container of what appeared to be crushed pills should be disregarded because they were not proven to be outside the residence.  He also alleges the hydrogen chloride gas generator should not be considered because it was actually a bug sprayer. [Petitioner] argues the items noted in the affidavits are insufficient to establish probable cause because each of them had an innocent use, and because the officers did not establish the precise content of the jar that appeared to contain crushed pills. [Petitioner]'s argument fails because it does not consider the "totality of the circumstances" surrounding the warrant.  In Miller, the court noted, "affidavits are not to be taken point by point to establish the sufficiency of probable cause," but rather the affidavits are to be viewed, "in a commonsense rather than hypertechnical manner."  Miller, 815 S.W.2d at 32. Only the probability of criminal activity, not a prima facie showing, is the standard of probable cause.  Id.

Here, the discovery outside the trailer of blister packs of pseudoephedrine, empty cans of Coleman fuel, propane cylinders, a can of acetone, and the detection of a chemical odor in the area is sufficient to raise the probability of methamphetamine production.  The State presented sufficient evidence that the items were viewed outside the trailer, and, therefore, there was probable cause underlying the issuance of the search warrant.  The trial court did not clearly err in denying the motion to suppress because the search warrant was not supported by probable cause.  Point one is denied.

(Mem. Supplementing Order Affirming J. Pursuant to Rule 30.25(b), Resp't Ex. H, at 4-6.)

With respect to Petitioner's second point, that the trial court erred in not conducting a hearing on Petitioner's second motion to suppress even though "the same motion had already been heard and overruled by the Associate Division of the Circuit Court of Ste. Genevieve County" (id. at 6-7), the Missouri Court of Appeals stated:

[Petitioner] filed a motion to suppress in the Associate Division of the Circuit Court of Ste. Genevieve County.  The motion alleged that all evidence seized from the search of [Petitioner]'s residence should be suppressed because the search warrant was based upon perjured, false and misleading information contained in the supporting affidavits and because the warrant was not supported by probable cause.  The associate circuit judge conducted a combined preliminary hearing and hearing on the motion to suppress.  The associate circuit judge overruled the motion to suppress, made a probable cause finding, and ordered the cause transferred to the presiding judge of the 24th Judicial Circuit for further disposition.

[Petitioner] filed a motion for change of venue, and the cause was ordered transferred to the Circuit Court of Madison County. [Petitioner] refiled his motion to suppress, alleging the same grounds as in the original motion.  At a hearing, the trial judge declined to hear the motion as it had already been ruled on by another judge.

[Petitioner] contends the trial judge was required by Section 542.296[9] to

---

[9]  In its footnote 2, the Missouri Court of Appeals stated that Missouri Revised Statutes "Sections 542.296.1 and 2 authorize a person aggrieved by an unlawful search to file a motion to suppress 'with the court in which there is pending against the moving party a criminal proceeding

conduct a hearing on the second motion because a motion to suppress hearing before the associate [circuit] judge was interlocutory and not conclusive or binding on future proceedings.  We note, however, that the full record of the motion to suppress hearing was before the trial judge in Madison County when he denied [Petitioner]'s second motion.  Thus, the practical effect of the trial judge's ruling was to adopt the record which was before the associate circuit judge.

As for [Petitioner]'s claim that a second hearing should be required because the first hearing was held before discovery attached, we note, after reviewing the record, that [Petitioner] has failed to identify any new information or evidence that was obtained in discovery that would have resulted in a different outcome had the motion been heard a second time. [Petitioner] had the opportunity to file the first motion at any time prior to the commencement of trial.  Section 542.296.3.[10]  He could have waited until after discovery to file his motion.  Instead, he filed the motion to suppress prior to the preliminary hearing. We find no error in the trial court's refusal to grant a second hearing on [Petitioner]'s motion to suppress.  Point two is denied.

(Mem. Supplementing Order Affirming J. Pursuant to Rule 30.25(b), Resp't Ex. H, at 7-8.)

With respect to Petitioner's last point on direct appeal, that

the trial court abused its discretion when it allowed the State to present rebuttal evidence to [Petitioner]'s denials on cross-examination that weapons and marijuana had been seized from his home in December 2003, and that he had told his girlfriend in a phone call from jail she could use money he was sending to her to "buy a bag of happiness,"

(id. at 8), the Missouri Court of Appeals stated:

[Petitioner] testified at trial and denied possessing any drugs or drug

---

growing out of the subject matter of the seizure.'"  (Mem. Supplementing Order Affirming J. Pursuant to Rule 30.25(b), Resp't Ex. H, at 7 n. 2.)

[10]  In its footnote 3, the Missouri Court of Appeals stated that Missouri Revised Statutes "Section 542.296.3 provides in pertinent part that a motion to suppress 'shall be made before the commencement of the trial of the moving party on the charge arising out of the seizure unless he was unaware of the grounds or had no opportunity to do so before trial.  In that event the motion may be made during trial.  However, the trial judge may in his discretion entertain a motion any time during trial.'"  (Mem. Supplementing Order Affirming J. Pursuant to Rule 30.25(b), Resp't Ex. H, at 8 n. 3.)

paraphernalia seized by officers and entered into evidence. A review of the trial transcript reveals [Petitioner] attempted to create an inference that law enforcement officers planted evidence of methamphetamine and drug paraphernalia on his property. [Petitioner]'s counsel continued the questioning as follows:

> Q.   Let's cut to the chase. On November 20th, of 2002, or any other time, have you ever been in possession of methamphetamine?
>
> A.   No.
>
> Q.   Have you ever operated or intended to manufacture methamphetamine?
>
> A.   No.
>
> Q.   Operate a methamphetamine lab, I guess?
>
> A.   No.

The State cross-examined [Petitioner] about a search warrant executed at [Petitioner]'s residence on December 12, 2003. [Petitioner]'s counsel objected based on relevance and on the grounds that the charges stemming from the subsequent arrest had not yet been proven. The objection was overruled on the basis that [Petitioner] had opened the door by denying he ever possessed or manufactured methamphetamine.

[Petitioner] admitted making a telephone call from the Ste. Genevieve County jail to his girlfriend, but said he did not remember if he told her he did not have a chance to reach for his guns when the police executed the search warrant. [Petitioner] also stated he did not know if he told his girlfriend she could "buy a bag of happiness" with some money that he was going to provide her through his family members.

Ste. Genevieve County Sheriff's Deputy Timothy Craig testified as a rebuttal witness for the State. [Petitioner] did not renew his objection prior to Craig taking the stand. Craig was involved with both the search of [Petitioner]'s residence on November 20, 2002, and the search on December 12, 2003. Craig testified without objection that during the December 12, 2003 search, he discovered a "large scale methamphetamine operation." Officers found multiple

-12-

items of glassware, cooking skillets, two-layer liquids, amber liquids, liquids that field-tested positive for methamphetamine, camp fuel, Red Devil lye, and iodine crystals. Over [Petitioner]'s objection, photographs of the seized items were admitted into evidence.

Craig also testified that he made a disc of phone calls placed by [Petitioner] from jail after his arrest. A portion of the disc was played for the jury without objection. The jury heard a phone call from [Petitioner] to his girlfriend where he referred to not being able to get his guns when the police arrived and to his girlfriend being able to buy a bag of happiness. Craig testified without objection that a loaded rifle was found by the front door of [Petitioner]'s residence, and that two loaded semi-automatic pistols were also recovered.

On appeal, [Petitioner] challenges only the cross-examination of [Petitioner] as to whether marijuana was found in his home, Deputy Craig's testimony about the seizure of firearms from [Petitioner]'s residence, and the playing of the telephone call from [Petitioner] to his girlfriend. While [Petitioner] made general objections to any cross-examination of [Petitioner] about the December 12, 2003 search, and to the admission of evidence of items seized during that search, he did not ask for a continuing objection after being overruled by the trial court. [Petitioner] did not specifically object to cross-examination about the marijuana, to questions about the guns found in [Petitioner]'s residence, or to the playing of the telephone call.[11]

The grounds asserted on appeal are limited to those stated at trial. State v. Brooks, 158 S.W.3d 841, 854 (Mo. [Ct.] App. . . . 2005). A defendant may not broaden the objection he presented to the trial court, nor may he rely on a different theory from the one offered at trial. Id. Where the grounds have been changed on appeal, nothing has been preserved for review. Id. Here, because [Petitioner] made only general objections to the admission of the evidence regarding the subsequent arrest and did not specifically object to the admission of rebuttal evidence and testimony regarding collateral issues, this particular issue is not preserved for appellate review. Thus, reversal is appropriate only if plain error is established.

A showing of plain error is established by showing an error that

---

[11] In its footnote four, the Missouri Court of Appeals stated that "[Petitioner] made a hearsay objection to Deputy Craig's testimony that he listened to the tape, but did not object when the trial court directed that the tape be played for the jury." (Mem. Supplementing Order Affirming J. Pursuant to Rule 30.25(b), Resp't Ex. H, at 10 n. 4.)

prejudiced the defendant to such an extent that a manifest injustice or miscarriage of justice resulted therefrom. State. v. Scurlock, 998 S.W.2d 578, 586 (Mo. [Ct.] App. . . . 1999). To show prejudice, a defendant must establish to a reasonable probability that in the absence of the introduction of the collateral matter the verdict would have been different. Id. Manifest injustice does not occur where there is overwhelming evidence of a defendant's guilt. Id.

Even if [Petitioner] is correct that the rebuttal evidence was erroneously admitted and assuming arguendo plain error exists here, there was overwhelming evidence introduced at trial regarding items related to the manufacture of methamphetamine seized from [Petitioner]'s property [i]n November 2002. See [i]d. at 588 (finding no prejudice in admitting inadmissible propensity evidence given the overwhelming admissible evidence of guilt). Given the evidence adduced at trial, there is not a reasonable probability that in the absence of the evidence admitted on collateral issues the verdict would have been different. We find there was no manifest injustice or a miscarriage of justice resulting from the introduction of the rebuttal evidence on collateral issues. Point three is denied.

(Mem. Supplementing Order Affirming J. Pursuant to Rule 30.25(b), Resp't Ex. H, at 8-11.)

After Petitioner's motion for rehearing or transfer to the Missouri Supreme Court was denied, the state appellate court issued its mandate on December 8, 2005. (See, e.g., Docket Sheet entries dated October 10, 2005 and December 8, 2005, for **State v. Prosser**, No. ED84632, https://www.courts.mo.gov/casenet/cases/searchDockets.do (last visited August 16, 2011).) Petitioner did not file a motion for rehearing or to transfer in the Missouri Supreme Court.

On December 29, 2005, Petitioner filed a pro se motion for post-conviction relief, along with a motion to recuse the trial court judge and prosecuting attorney because Petitioner planned to call them as witnesses at a hearing. (See Pet'r Pro Se Post-Conviction Mot., Mot. Legal File, Resp't Ex. K, at 4-118; see also Resp't Ex. M at 1-127.)

Petitioner, through his appointed attorney, subsequently filed an amended post-

-14-

conviction motion, which contained four claims along with a request for an evidentiary hearing and incorporated most of Petitioner's pro se claims as well as Petitioner's pro se motion to recuse. (See Pet'r Am. Post-Conviction Mot. Resp't Ex. L, at 123-242.) In the amended motion, Petitioner presented the following claims:

(a) Petitioner's Fifth, Sixth, and Fourteenth Amendment rights to due process and to present a defense were violated when the prosecutor repeatedly advised Parker he could assert his Fifth Amendment right against self-incrimination in response to Petitioner's counsel's efforts to question Parker about his criminal record and his role in Petitioner's arrest, because the prosecutor's conduct "was a thinly-veiled threat that deprived [Petitioner of] the opportunity to discover potentially exculpatory or inculpatory evidence" (id. at 126);

(b) Petitioner's Fifth, Sixth, and Fourteenth Amendment rights to due process and the effective assistance of counsel were violated when Petitioner's trial attorney "opened the door to the wholly collateral, but extremely prejudicial, issue of the seizure of methamphetamine-related items from [Petitioner]'s property 13 months after [Petitioner]'s arrest for the instant charges" through counsel's questioning of Petitioner about whether he at "any other time" possessed or manufactured methamphetamine (id. at 131-32);

(c) Petitioner's Fifth, Sixth, and Fourteenth Amendment rights to due process and the effective assistance of counsel were violated by Petitioner's trial attorney's failure to object to the prosecutor's argument that Petitioner "was 'destroying the life'" of a teenaged girl who was on Petitioner's property when it was searched on December 12, 2003, because that argument was highly inflammatory and had no basis in evidence (id. at 139; this claim was claim 8(i) in

-15-

Petitioner's pro se post-conviction motion);

(d) Petitioner's Fifth, Sixth, and Fourteenth Amendment rights to due process and the effective assistance of counsel were violated by Petitioner's trial attorney's failure to object to testimony about guns seized from Petitioner's home during the execution of the search warrant on November 20, 2002, because that testimony was "the product of an illegal search," was "totally irrelevant," and created an inference "that the guns were to guard a meth-lab and not for legitimate purposes" (id. at 142; this claim was claim 8(u) in Petitioner's pro se post-conviction motion);

(e) Petitioner's attorney on direct appeal provided ineffective assistance in failing to file a motion for rehearing or transfer or for rehearing en banc in the Missouri Supreme Court due to:  the Missouri Court of Appeals' error in referring to Petitioner's arrest as being based on warrants, which was "wrong, no one had any warrants for [Petitioner]'s arrest and this was only a ruse statement by the arresting officer(s) to cover their illegal arrest"; the fact that items seized from Petitioner's residence were deleted from the charging document when the trial court granted the prosecutor leave to amend by interlineation and that amendment "chang[ed] the 'overwhelming' evidence the appeals court thought was there"; and the conflict the state appellate court's ruling on point 3 had with **State v. McCoy**, 175 S.W.3d 161 (Mo. Ct. App. 2005) and **State v. Berwald**, 186 S.W.3d 349 (Mo. Ct. App. 2005), and cases cited therein (Pet'r Am. Post-Conviction Mot., Resp't Ex. L, at 157-58; this claim was claim 8(c) in Petitioner's pro se post-conviction motion);

(f) Petitioner's right to the effective assistance of counsel on direct appeal was violated

because that attorney did not raise an issue regarding the sufficiency of the evidence, trial court error, and prosecutorial misconduct based on (1) the prosecutor's amendment of the information so as to delete various listed items without the giving of a "withdrawal of the evidence instruction" and without a limitation on the prosecutor's argument about the deleted items; and (2) the prosecutor's highly prejudicial, immaterial, and irrelevant argument" that Petitioner was "destroying the life of a 17-year old" girl who was present during the December 2003 search of Petitioner's home (id. at 161-62; this claim was claim 8(e) in Petitioner's pro se post-conviction motion);

(g) Petitioner's Sixth and Fourteenth Amendment rights to the effective assistance of trial counsel were violated by that attorney's failure to object to the prosecutor giving opinion testimony through a suggestive chart (exhibit 50) about how methamphetamine is made that was not admitted into evidence (id. at 166; this claim was claim 8(f) in Petitioner's pro se post-conviction motion);

(h) Petitioner was denied his Fifth, Sixth, and Fourteenth Amendment rights by his trial attorney's ineffective assistance in not objecting to the prosecutor's closing argument that "This case is about a series of lies and deception. We just disagree on who did it," because the prosecutor may not call Petitioner a liar; that "a picture is worth a thousand words," because the referenced pictures were from Petitioner's subsequent arrest; and that the jury should not ignore the December 12, 2003 incident, which "shows [Petitioner] lied to you [and] knows how to make methamphetamine," because Petitioner did not claim he did not know how to make methamphetamine (id. at 169; this claim was claim 8(h) in Petitioner's pro se post-conviction

motion);

(i) Petitioner's Fifth, Sixth, and Fourteenth Amendment rights to confrontation and the effective assistance of trial counsel were violated by his trial attorney's failure to object to Oder's testimony that "we had information that [Petitioner] had possibly been manufacturing methamphetamine," which erroneous information came from Parker (id. at 172; this claim was claim 8(m) in Petitioner's pro se post-conviction  motion);

(j) Petitioner's Fifth, Sixth, and Fourteenth Amendment rights to the effective assistance of counsel and to disclosure under **Brady v. Maryland**, 373 U.S. 83 (1963), were violated by his trial attorney's failure to object to the trial court's and prosecutor's errors that allowed the prosecutor to elicit, over Petitioner's objections, testimony from Oder about Parker, despite knowledge that Parker had pleaded his Fifth Amendment privilege against self-incrimination and the State did not have any recording of Parker's statement(s) and in view of the facts the prosecutor withheld from Petitioner any taped statement(s) by Parker and the prosecutor advised Parker to plead the Fifth rather than answer Petitioner's counsel's questions (id. at 172; this claim was claim 8(o) in Petitioner's pro se post-conviction  motion);

(k) Petitioner's rights under the Fifth, Sixth, and Fourteenth Amendments were violated by his trial attorney's failure to provide effective assistance by not objecting when the trial court granted the State's out-of-time motions in limine regarding allegations of the unconstitutional seizure of evidence and regarding drug samples, which deprived Petitioner of the opportunity to present a complete defense and to cross-examine fully (id. at 176-77; this claim was claim 8(p) in Petitioner's pro se post-conviction motion);

-18-

(l) Petitioner's rights under the Fifth, Sixth, and Fourteenth Amendments were violated by his trial attorney's failure to object to the prosecutor's statements about the police having warrants for Petitioner's arrest in November 2002, "that he knew to be lies" due to deposition and preliminary hearing testimony of Oder that Oder called to verify there were outstanding arrest warrants for Petitioner when the officers were at Petitioner's residence (id. at 32; this claim was claim 8(q) in Petitioner's pro se post-conviction motion);

(m) Petitioner's rights under the Fifth, Sixth, and Fourteenth Amendments were violated by his trial attorney's failure to object to the prosecutor giving opinion testimony through a suggestive chart or exhibit (exhibit 51) that was not admitted into evidence (id. at 181; this claim was claim 8(r) in Petitioner's pro se post-conviction motion);

(n) Petitioner's rights under the Fifth, Sixth, and Fourteenth Amendments to the effective assistance of counsel were violated by his trial attorney's failure to object to testimony creating an adverse inference that Petitioner "was doing something illegal because [he] had $2,800.00 in cash on him when [he] was arrested" when the prosecutor and Petitioner's trial attorney knew the prosecutor had, prior to trial, withdrawn the forfeiture action regarding that money (id. at 183; this claim was claim 8(s) in Petitioner's pro se post-conviction motion);

(o) Petitioner's Fifth, Sixth, and Fourteenth Amendment rights to the effective assistance of counsel were violated by his trial attorney's failure to object to Deputy Schulte's testimony that "Usually people have them when they're making meth and then weighing them out to distribute them in smaller amounts," which "creat[ed] an adverse inference that [Petitioner] was using his scale for weighing and distributing meth" when Petitioner was not charged with either

-19-

making or distributing methamphetamine (id. at 185; this claim was claim 8(t) in Petitioner's pro se post-conviction motion); and

(p) Petitioner's Fifth, Sixth, and Fourteenth Amendment rights to the effective assistance of counsel were violated by his trial attorney's failure to object to the prosecutor's leading questions asking Schulte on redirect examination why officers do not take everything at a site of an arrest, which allowed the jury not to question why methamphetamine-related items were left behind at Petitioner's residence (id. at 187; this claim was claim 8(v) in Petitioner's pro se post-conviction motion).[12]

The motion court[13] denied Petitioner's request for an evidentiary hearing and Petitioner's original pro se and amended post-conviction motions. (J. Den. Req. Evidentiary Hr'g and Dismissing Allegations of Movant (Judgment), Mot. Legal File, Resp't Ex. L, at 246-53).

In his post-conviction appeal, Petitioner raised four points. (Pet'r Br., Resp't Ex. I.) For his first point, Petitioner argued his rights to due process and to present a defense under the Fifth, Sixth, and Fourteenth Amendments were violated by the prosecutor's repeated advice to Parker to assert his Fifth Amendment privilege against self-incrimination in response to Petitioner's counsel's repeated pretrial efforts to question Parker about his criminal record and his role in Petitioner's arrest, because that advice was "really a threat that deprived [Petitioner

---

[12] The claims in Petitioner's pro se post-conviction motion that were not expressly included in Petitioner's amended motion were three claims that his appellate attorney provided ineffective assistance on direct appeal, four claims that his trial attorney provided ineffective assistance, and one claim of prosecutorial misconduct. (Pet'r Pro Se Post-Conviction Mot., Mot. Legal File, Resp't Ex. K, at 14-15, 21, 28, 36, 44, 46, 48, and 52.)

[13] The judge presiding over the post-conviction proceedings was the same judge who had presided over the trial proceedings.

of] the opportunity to discover potentially exculpatory or inculpatory evidence." (Id. at 15, 18.)  Second, Petitioner urged that his rights to due process and the effective assistance of counsel under the Fifth, Sixth, and Fourteenth Amendments were violated when his trial attorney "'opened the door' to highly prejudicial evidence of a drug raid and meth lab discovered on [Petitioner]'s property subsequent to the charged offenses" and by that attorney's failure to object to the admission of evidence on this collateral issue.  (Id. at 16, 26.)  For his third point, Petitioner contended that his rights to due process and the effective assistance of counsel under the Fifth, Sixth, and Fourteenth Amendments were violated by his trial attorney's failure to object to the prosecutor's argument that Petitioner was "destroying the life" of the teenaged girl on Petitioner's property when it was searched in December 2003, because that argument was highly inflammatory and not based on the evidence.  (Id. at 17, 35.)  In Petitioner's fourth point on appeal, he argued his rights to due process and the effective assistance of counsel under the Fifth, Sixth, and Fourteenth Amendments were violated by his trial attorney's failure to object to testimony about guns seized from Petitioner's home during the execution of the search warrant on November 20, 2002, because the evidence was irrelevant and highly inflammatory.  (Id. at 18, 40.)

The Missouri Court of Appeals for the Eastern District of Missouri affirmed the motion court's decision in a summary per curiam order accompanied by a memorandum explaining the appellate court's order that was sent to the parties only.  (Order and Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), dated May 1, 2007, Resp't Ex. N.)

With respect to Petitioner's first point, the Missouri Court of Appeals stated

For his first point, [Petitioner] contends that the trial court erred in denying without a hearing his claim that he was denied his right to present a defense because the prosecutor advised the confidential informant to take the Fifth Amendment, thus thwarting [Petitioner]'s counsel's attempts to discover potential evidence from the informant.

At a deposition on November 14, 2004 [sic - November 14, 2003] the prosecutor advised the confidential informant, who did not have an attorney present and who was then incarcerated, that he was free to take the Fifth Amendment in response to any questions after he gave his name.  The prosecutor told him that testifying could hurt him because he would be questioned about his knowledge of manufacturing methamphetamine.   Thereafter, after stating his name, the confidential informant declined to answer further deposition questions:

> [C.I.]: I take the Fifth on it all.  I want my attorney present.  I'm done.

> [TRIAL COUNSEL]: So you are not going to answer any further questions?

> [C.I.]: I'll take the Fifth on them.

> [TRIAL COUNSEL]: Well, let's certify it.

> [C.I.]: I mean, I have the right for an attorney to be present or at least speak with one.

> [PROSECUTOR]: I think it would be crazy to testify without having somebody here who represents you.

> [C.I.]: Like I said, I'll be glad to speak with you after December 31st.  I can speak with my attorney when I'm out of here and my program is over.  And I can stay clean.

At a deposition on February 18, 2004, the confidential informant took the Fifth Amendment with his own counsel present.

[Petitioner] filed a motion to compel the confidential informant's deposition testimony after the informant took the Fifth Amendment on November 14, 2003.  He subsequently withdrew this motion.  However,

[Petitioner] filed a second motion to compel after the informant took the Fifth Amendment on February 18, 2004. The trial court overruled the motion.

The confidential informant did not testify at trial. In his motion for new trial, [Petitioner] asserted that the trial court erred in denying his pre-trial motion to compel the deposition testimony of the confidential informant. He claimed that the informant's assertion of rights was inappropriate because [the informant] had no reasonable fear of being prosecuted. He maintained that the denial deprived him of his right to confront possible witnesses against him, his right to compel witnesses on his behalf, and his right to a fair trial and due process. [Petitioner] did not raise this issue in his direct appeal.

In his amended [post-conviction] motion, [Petitioner] alleged that he was denied his right to present a defense because the prosecutor repeatedly advised the confidential informant that he should assert his Fifth Amendment rights in response to defense counsel's repeated pretrial efforts to question the informant about his criminal record and his role in [Petitioner]'s arrest. [Petitioner] further alleged that because the prosecutor was in a position to prosecute the confidential informant, the prosecutor's advice was a "thinly-veiled threat" that deprived [Petitioner] of the opportunity to discover potentially exculpatory or inculpatory evidence.

The motion court denied this claim for multiple reasons. It found that the record did not show that the prosecutor threatened the informant, that the informant exercised his rights in the presence of his own attorney, and that [Petitioner] failed to allege prejudice.

We do not reach the merits of this claim because it is not a proper ground for post-conviction relief. Claims of prosecutorial misconduct are claims of trial error that can be raised on direct appeal. See State v. Peterson, 833 S.W.2d 395 (Mo. [Ct.] App. . . . 1992). Trial errors are not generally cognizable in a post-conviction proceeding and those proceedings cannot be used as a substitute for direct appeal or to obtain a second appellate review. State v. Redman, 916 S.W.2d 787, 793 (Mo. banc 199[6]). "Issues about which defendant and his counsel knew and which could have been raised at trial and by direct appeal may not be raised by post-conviction motion." State v. Hunter, 840 S.W.2d 850, 860 (Mo. banc 1992).

The record reflects that at the time of trial, [Petitioner] and his counsel knew all of the facts that now support his claim of prosecutorial misconduct. This was an issue that could have been raised on direct appeal and cannot now

be raised in a motion for post-conviction relief.  Point one is denied.

(Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), dated May 1, 2007,

Resp't Ex. N, at 4-6.)

In resolving Petitioner's second point, the Missouri Court of Appeals stated:

> For his second point, [Petitioner] contends that the motion court erred in denying without an evidentiary hearing his claim that counsel was ineffective for "opening the door" and then failing to object to highly prejudicial evidence that a methamphetamine lab was discovered in a drug raid on his property thirteen months after the charged offense[s].

> [Petitioner] testified at trial.  During [Petitioner]'s direct examination, trial counsel asked [Petitioner] about the events on November 20, 2002.  After [Petitioner] testified that the officers went into his shed, the examination continued as follows:

> > Q.    [TRIAL COUNSEL]: And at the time that they entered that shed, did you have any methamphetamine in there?

> > A.    [PETITIONER]: No.

> > Q.    Did you have any items that you were planning on using to manufacture methamphetamine?

> > A.    No.

> Counsel then went through items that law enforcement officers had reported that they seized, and [Petitioner] denied having any of those items.  Trial counsel interrupted this line of questioning with the following exchange:

> > Q.    Let's cut to the chase.  On November 20th, of 2002, or any other time, have you ever been in possession of methamphetamine?

> > A.    No.

> > Q.    Have you ever operated or intended to manufacture methamphetamine?

> A.   No.
>
> Q.   Operate a methamphetamine lab, I guess?
>
> A.   No.

Then counsel resumed questioning [Petitioner] about items listed as seized, and with respect to each item, [Petitioner] either denied having the item or explained that he had it for a legitimate use.

On cross-examination, the prosecutor impeached [Petitioner] with his prior convictions and prior testimony from the hearing on the motion to suppress.  The prosecutor then had [Petitioner] acknowledge that trial counsel had asked him if he had possessed or manufactured methamphetamine on November 20, 2002, or at any other time, and that he had answered "no" to both questions.  The prosecutor started to ask a question by referring to December 11, 2003.  Trial counsel objected on the grounds that he anticipated the prosecutor was going to ask about [Petitioner]'s subsequent arrest, which was not relevant.  The prosecutor argued that defense counsel "opened the door" to the evidence because in response to defense counsel's questions, [Petitioner] testified he never possessed methamphetamine and never made methamphetamine.  The trial court permitted the prosecutor to ask about events in December 2003, but not about whether charges had been filed.

The state proceeded to establish that at 6:30 a.m. on December 12, 2003, [Petitioner] was at his home with a seventeen-year-old girl . . . . , when a search warrant was executed; that he was taken into custody; and that he later made a telephone call to [that girl].  The state specifically asked [Petitioner] whether he had not said, in the tape-recorded phone call to [that girl], that he did not have time to reach for his guns when the police arrived and that he would provide her money to "buy a bag of happiness."  [Petitioner] answered that he did not remember making those statements.  [Petitioner] also denied having a number of drug-related items on his property at that time.

On rebuttal, the state called Deputy Timothy Craig, who executed the search warrant on December 12, 2003.  He characterized [Petitioner]'s property as a "large-scale methamphetamine operation."  He testified, over [Petitioner]'s objection that the prosecutor was trying a different case, to each of the items that he found in the 2003 search that . . . could be used in the manufacture of methamphetamine, all of which [Petitioner] had denied having.  He also testified that he found several firearms, and he laid the foundation for the admission of

the recorded telephone call between [Petitioner] and [the seventeen-year-old girl], which was played for the jury.

On direct appeal, appellate counsel asserted that the trial court abused its discretion when it allowed the state to introduce evidence that rebutted [Petitioner]'s denials on cross-examination that weapons and marijuana had been seized from his home in December 2003 and evidence that he had told his girlfriend in a phone call from jail that she could use money he was sending to her to "buy a bag of happiness." We found that these claims were not preserved because trial counsel did not make specific objections to [Petitioner]'s cross-examination about the December 12, 2003 search or to the admission of evidence of items seized during that search, or to the playing of the recording of the telephone call. Accordingly, we reviewed for plain error. We held that even if the admission of the rebuttal evidence constituted plain error, there was no prejudice because the evidence of [Petitioner]'s guilt was overwhelming.

In his amended motion, [Petitioner] alleged that trial counsel was ineffective for opening the door to the "wholly collateral, but extremely prejudicial, issue of the seizure of methamphetamine-related items from [Petitioner]'s property 13 months after [Petitioner]'s arrest for the instant charges." [Petitioner] alleged that competent trial counsel would have limited his questions to the date of the offense. [Petitioner] further alleged that he was prejudiced because counsel's actions made [Petitioner] look like a liar to the jury and allowed the prosecutor to elicit evidence on rebuttal that [Petitioner] "had several guns, would have shot deputies, and he promised money to a seventeen-year-old girl in order for her to buy meth."

The motion court found that the state would have been able to introduce the evidence in response to [Petitioner]'s testimony that he was unaware of the presence of methamphetamine and did not intend to manufacture it. It also found [Petitioner] was not prejudiced, because on direct appeal this court held that the evidence of [Petitioner]'s possession in November 2002 was so overwhelming that there was no reasonable probability that the evidence of the December 2003 raid would have changed the outcome of trial.

In order to establish Strickland[ v. Washington, 466 U.S. 668 (1984),] prejudice, [Petitioner] had to show that the absence of this evidence would have caused a reasonable probability that the outcome of the trial would have been different. Barnett v. State, 103 S.W.3d 765, 771 (Mo. banc 2003). A [post-conviction] movant cannot make this showing when the evidence of guilt is overwhelming. Id.; McEl[h]eny v. State, 156 S.W.3d 469, 473 (Mo. [Ct.] App.

. . . 2005); <u>Dugan v. State</u>, 112 S.W.3d 126, 127 (Mo. [Ct.] App. . . . 2003).
Our determination on direct appeal that [Petitioner] was not prejudiced by the
admission of this evidence because the evidence of [Petitioner]'s guilt was
overwhelming is dispositive. [Petitioner] cannot show that there was a
reasonable probability that the result of the trial would have been different but
for his trial counsel "opening the door" to evidence about the December 12, 2003
raid, and therefore cannot demonstrate that <u>Strickland</u> prejudice resulted from
counsel's acts.

There was overwhelming evidence that on November 20, 2002,
methamphetamine and numerous items used either to take or to manufacture
methamphetamine were seized from [Petitioner]'s underground shed and camper.
This was established by the testimony of the two police officers who executed
the search; two written search warrant inventories that listed each item seized;
and photographs of the property and items seized. [Petitioner] countered this
evidence only by denying that it was there or by claiming it had an innocent use.

Given the overwhelming evidence of [Petitioner]'s guilt, there is no
reasonable probability that the result of the trial would have been different if trial
counsel had not opened the door to the evidence of the December 2003 search
of [Petitioner]'s property. The motion court did not clearly err in denying this
claim without an evidentiary hearing. Point two is denied.

(Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), dated May 1, 2007,

Resp't Ex. N, at 6-10.)

With respect to Petitioner's third point, the Missouri Court of Appeals stated:

For his third point, [Petitioner] maintains that the motion court clearly
erred in denying without a hearing his claim that trial counsel was ineffective in
failing to object to the state's closing argument that [Petitioner] was "destroying
the life" [of the seventeen-year-old girl]. He argues that the argument was
inflammatory and not supported by the evidence.

This comment was made in the rebuttal portion of the state's closing
argument in the following context:[14]

_____

[14] The state appellate court stated in its footnote 1: "In [Petitioner]'s closing argument, trial
counsel had argued that this evidence was irrelevant and the jury should not decide guilt based on events
that happened a year later." (Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), dated

[Petitioner's trial attorney] wants you to ignore December 12th, 2003. But there is a reason why you shouldn't. Because it shows that [Petitioner] lied to you from the witness stand. It shows that [Petitioner] knows how to make methamphetamine.

If you believe that he somehow gleaned this knowledge during the period between November of 2002, and December of 2003, that somehow his education happened during that intervening period, then by all means, find him not guilty.

And December 12th, 2003, shows why these cases matter. We have a 43-year-old man and a 17-year-old woman whose life he is destroying.

Trial counsel did not object to this argument.

In his amended motion, [Petitioner] alleged that he was denied effective assistance of trial counsel when trial counsel failed to object to the prosecutor's argument that [Petitioner] was "destroying the life" of [the seventeen-year-old girl]."

The motion court denied this claim without an evidentiary hearing because it found [the claim] to be without merit. The motion court found that the amended motion failed to set forth what objection trial counsel should have made that would have been sustained and that the prosecutor's brief statement that [Petitioner] was destroying the life of [the seventeen-year-old girl] was a logical inference from the evidence that [Petitioner] offered to provide [that girl] with a "bag of happiness."

The failure to object during closing argument only results in ineffective assistance of counsel if it prejudices the accused and deprives him of a fair trial. Anderson v. State, 196 S.W.3d 28, 38 (Mo. banc 2006); Jackson v. State, 205 S.W.3d 282, 290 (Mo. [Ct.] App. . . . 2006). [Petitioner] argues this was an ad hominem attack or other irrelevant statement based on a collateral issue, citing State v. Whitfield, 837 S.W.2d 503 (Mo. banc 1992). We do not need to reach this question because [Petitioner] cannot show this argument resulted in Strickland prejudice. This remark was based on the evidence of the December 2003 search warrant execution and [Petitioner]'s telephone call to [the seventeen-

May 1, 2007, Resp't Ex. N, at 10 n. 1.)

year-old girl]. In our discussion of point two, we held that counsel's "opening the door" to this evidence did not prejudice [Petitioner] because it could not have changed the outcome of trial given the overwhelming evidence of [Petitioner]'s guilt. For the same reason, there is no possibility that the outcome of trial would have been different had counsel successfully objected to this comment in closing argument. See Tis[]ius v. State, 183 S.W.[3]d 207, 213 (Mo. banc 2006).

     The motion court did not clearly err in denying this claim without an evidentiary hearing. Point three is denied.

(Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), dated May 1, 2007,

Resp't Ex. N, at 10-12.)

     In resolving Petitioner's fourth and last point in his post-conviction appeal, the state

appellate court stated:

     For his fourth point, [Petitioner] asserts that the motion court clearly erred in denying without a hearing his claim that counsel was ineffective in failing to object to testimony about guns seized from [Petitioner]'s home during the execution of the search warrant on November 20, 2002, on the ground that this testimony was irrelevant.

     During the execution of that search warrant, officers found numerous items that could be used in the manufacture of methamphetamine, several of which tested positive for the presence of methamphetamine or pseudoephedrine. Officers also seized several weapons, including a .38 caliber pistol, a .380 pistol, a 30-06 rifle, and a .12 gauge shotgun. Trial counsel filed a motion to suppress the seized evidence on the grounds that the search warrant was illegally issued and executed. After a hearing, . . . the motion [was denied]. At trial, counsel objected to the introduction of all of the evidence seized pursuant to the search warrant on the grounds stated in the motion to suppress, and the court allowed a continuing objection. Appellate counsel challenged the admission of this evidence on direct appeal, arguing that it was the product of an illegal search warrant.

     In his amended motion, [Petitioner] alleged that trial counsel was ineffective for failing to object to the testimony about the weapons. He alleged that they were the product of an illegal search warrant and the evidence about the weapons was irrelevant. He further alleged that the presence of the weapons

allowed an inference that they were there to guard a meth lab.

The motion court found that his allegation was without merit because the evidence of the guns was relevant and admissible to support an inference that [Petitioner] had the guns to guard his meth lab. Because counsel did object on the ground that the search was illegal, our inquiry is limited to the claim that counsel was ineffective for not objecting on relevance grounds.

To prevail on this claim, [Petitioner] must show that his counsel's objections would have been upheld if made and that the failure to object resulted in a substantial deprivation of his right to a fair trial. Ric[k]ley v. State, 52 S.W.[3]d 591, 596 (Mo. [Ct.] App. . . . 2001). Trial counsel is not required to make meritless objections. Sidebottom v. State, 781 S.W.2d 791, 799 (Mo. banc 1989) . . . . Counsel is not ineffective for failing to make non-meritorious objections or failing to object to admissible evidence. State v. Lewis, 874 S.W.2d 420, 427 (Mo. [Ct.] App. . . . 1994).

On the possession of methamphetamine charge, the state was required to prove that [Petitioner] possessed methamphetamine and that he knew or was aware of its presence and nature. MAI-CR3d 325.02. On the possession of drug paraphernalia charge, the state was required to prove possession of items that were drug paraphernalia, that [Petitioner] was aware of their presence and nature, and that [Petitioner] intended to use the items for the purpose of manufacturing methamphetamine. MAI-CR3d 325.22

At trial, [Petitioner] denied that most of the items seized were on his property and contended that the remaining items seized were there for legitimate purposes. He called family members to testify they had never seen any evidence of methamphetamine production on his property. In closing argument [Petitioner] argued that the police lied about what they found on [Petitioner]'s property. He argued that the jury should believe his denials that he ever used or manufactured methamphetamine, which was supported by the testimony of family members who never saw a meth lab on [Petitioner]'s property.

The general rule is that in sale and possession of controlled substance cases, evidence of a defendant's contemporaneous possession of other drugs, weapons, money, or drug paraphernalia is relevant and admissible to show that the defendant knowingly and intentionally possessed the controlled substance. State v. Dowell, 25 S.W.3d 594, 603 (Mo. [Ct.] App. . . . 2000), and cases cited therein. In Dowell, the appellate court applied this rule to hold that a handgun seized during a vehicle stop along with drugs and a syringe was admissible to

-30-

show knowledge and intent in a drug manufacturing case based on a residential search later on the day of the traffic stop.  Id.

The evidence that [Petitioner] possessed weapons at the scene of the search on November 20, 2002, was relevant and admissible to show that he knowingly possessed methamphetamine and knowingly possessed drug paraphernalia with the intent to use it to manufacture methamphetamine. Accordingly, an objection to this evidence would have not been sustained.

The motion court did not clearly err in denying this claim without an evidentiary hearing.  Point four is denied.

(Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), dated May 1, 2007,

Resp't Ex. N, at 12-14.)

The appellate court issued its mandate in the post-conviction appeal on August 27,

2007, after the Missouri Supreme Court denied transfer.  (See, e.g., Docket Sheet entries dated

August 21, 2007, and August 27, 2007, for **Prosser v. State**, No. ED88172,

https://www.courts.mo.gov/casenet/cases/searchDockets.do (last visited August 18, 2011).)

Petitioner then filed this habeas proceeding, asserting five grounds for relief in his

original and supplemental pro se pleadings. (See Pet'r Pet. and Pet'r Supplemental Claim [Docs.

1 and 18].)  Specifically, Petitioner seeks federal habeas relief on the grounds that:

(1) the November 2002 search and arrest warrants and seizures were unconstitutional

in that the search warrant described a location on land belonging to the confidential informant,

which land is adjacent to Petitioner's land; the items seized belonged to and were seized from

land owned by the confidential informant; and the arrest warrant issued for Petitioner was not

based on a judge's independent finding that probable cause existed for the warrant (Pet'r Pet

at 6 [Doc. 1 at 5]);

-31-

(2) Petitioner's trial attorney provided ineffective assistance of counsel in that Petitioner asked his attorney to file a motion to dismiss based on outrageous government conduct[15] and that attorney did not do so, telling Petitioner it was not an affirmative defense and the jury would decide the issue (id. at 7-8 [Doc. 1 at 6-7]);

(3) the trial court erred in allowing the State to present rebuttal evidence about the subsequent seizure of drugs and related items from Petitioner's residence in December 2003 (id. at 9 [Doc. 1 at 8]);[16]

(4) the trial court erred in overruling Petitioner's objection to and allowing the introduction of evidence seized, and in declining to have a hearing on Petitioner's second motion to suppress (id. at 11 [Doc. 1 at 10]; and

(5) the arrest warrants for "failure to appear" which were used by police officers to visit and search Petitioner's property in November 2002 were invalid because they did not state the alleged date Petitioner "failed to appear," were a pretext used by the officers to go to

---

[15]   The allegedly outrageous government conduct arose out of the confidential informant providing the location and items for the meth lab, the confidential informant's statements led to the police action resulting in Petitioner's prosecution, and the prosecutor then told the confidential informant to assert his Fifth Amendment privilege against self-incrimination "to conceal the fact the location described on the Search Warrant described [the confidential informant]'s property & not adjacent land [the confidential informant had] sold to [Petitioner]'s father and that [the] items seized [that Petitioner] was charged/tried for belonged to [the confidential informant] from his land." (Pet'r Pet. at 7-8 [Doc. 1 at 6-7].)

[16]   In support of this ground for relief, Petitioner refers to the "prosecutor t[elling] the jury [Petitioner] was facing trial on unrelated drug charges for items seized subsequent to" the charges relevant to this federal habeas proceeding. (Pet'r Pet. at 9 [Doc. 1 at 8].)  The record does not reveal that this alleged prosecutorial misconduct was presented to the state courts.  Claims of prosecutorial misconduct that are not presented "for state court review are defaulted." **Malone v. Vasquez**, 138 F.3d 711, 716-17 (8th Cir. 1998).  The Court will address whether or not it may consider the merits of this defaulted claim when it discusses procedural default issues.

Petitioner's residence in November 2002, and were not disclosed as invalid by the prosecutor[17] (Pet'r Supplemental Claim at 1 [Doc. 18 at 2]).

In addition to countering that the grounds for relief lack merit, Respondents urge that ground one presents Fourth Amendment challenges that not cognizable in a federal habeas proceeding based on **Stone v. Powell**, 428 U.S. 465 (1976); that the second ground is procedurally barred because Petitioner did not present that ineffective assistance of trial counsel claim in his post-conviction appeal; that the third ground is not cognizable because it focuses on state court error or is procedurally barred to the extent prosecutorial misconduct is alleged because that claim was not presented to the state courts; that the fourth ground alleges state court errors that are not cognizable in this federal habeas proceeding; and that the supplemental claim, ground five, is either not cognizable under **Stone**, supra, or procedurally barred because the claim the prosecutor did not disclose the invalidity of the warrant was not presented to the state courts.  The Court will first address the cognizability issues, then the procedural bar issues, and then the merits of any remaining claim.

---

[17]  To the extent this seeks to present a claim of prosecutorial misconduct due to the alleged failure of the prosecutor to disclose the alleged invalidity of warrants relevant to the November 2002 arrest of Petitioner and search of his home, the record does not reveal that the issue of this alleged prosecutorial misconduct was presented to the state courts.  Claims of prosecutorial misconduct that are not presented "for state court review are defaulted."  **Malone**, 138 F.3d at 716-17.  The Court will address whether or not it may consider the merits of this defaulted claim when it discusses procedural default issues.

## Discussion

Cognizability - Grounds One, Four, and Five - Fourth Amendment Claims.  In grounds one, four, and five, Petitioner presents Fourth Amendment challenges to the search and arrest warrants relevant to his arrest and the search and seizure of his property in November 2002, as well as to the admission of seized evidence.  Respondents argue these are Fourth Amendment challenges not cognizable under **Stone**, supra.

Petitioner unsuccessfully presented these challenges to the state trial and appellate courts, in pretrial and trial proceedings, as well as on direct appeal.

"A Fourth Amendment claim of an unconstitutional search or seizure is not cognizable in a habeas corpus action unless the state has not 'provided an opportunity for full and fair litigation' of the claim.'" **Sweet v. Delo**, 125 F.3d 1144, 1149 (8th Cir. 1997) (quoting Stone, 428 U.S. at 494).[18]  More specifically, "a Fourth Amendment claim is Stone-barred, and thus unreviewable by a federal habeas court, unless either the state provided no procedure by which the prisoner could raise his Fourth Amendment claim, or the prisoner was foreclosed from using that procedure because of an unconscionable breakdown in the system." **Willett v. Lockhart**, 37 F.3d 1265, 1273 (8th Cir. 1994) (en banc).  "[A] 'mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process.'" **Chavez v. Weber**, 497 F.3d 796, 802 (8th Cir. 2007) (quoting

---

[18] **Stone** bars federal habeas review of Fourth Amendment claims directed to both arrests and seizures of evidence.  See **Palmer v. Clarke**, 408 F.3d 423, 437 (8th Cir. 2005) (concluding **Stone** barred federal habeas review of the petitioner's Fourth Amendment challenges to his arrest and to the seizure of evidence at the time of his arrest).

Capellan v. Riley, 975 F.2d 67, 71 (2nd Cir. 1992)).  "The federal courts on habeas review of [Fourth Amendment] claims are not to consider whether full and fair litigation of the claims in fact occurred in the state courts, but only whether the state provided an opportunity for such litigation."  **Willett**, 37 F.3d at 1273.

The record clearly reveals that Missouri has a system available for raising Fourth Amendment claims in criminal cases, in that Petitioner pursued his Fourth Amendment claims in the associate circuit court, the trial court, and the state appellate court on direct appeal.  See also Mo. Rev. Stat. § 542.296; **Willett**, 37 F.3d at 1273 (noting the federal appellate court was not aware of any state that does not have a system for raising Fourth Amendment challenges in criminal cases).  Moreover, the record discloses that the state courts addressed the Fourth Amendment challenges Petitioner presented, although Petitioner may disagree with the state courts' resolution of those issues.  The available record clearly shows that Missouri has a procedure by which Petitioner could present his Fourth Amendment challenges, and that Petitioner "was [not] foreclosed from using that procedure because of an unconscionable breakdown in the system."  **Willett**, 37 F.3d at 1273.

Petitioner's argument that the trial court should have conducted a hearing on the second motion to suppress does not support federal habeas review of his Fourth Amendment claims.  **Id.** at 1270.  Even if Petitioner's position has merit, which this Court is not conceding or implying, a federal habeas court's inquiry "focuses on whether [the petitioner] received an opportunity for full and fair litigation of his claim, not on whether legal or factual error in fact occurred."  **Chavez**, 497 F.3d at 802; see also **Willett**, 37 F.3d at 1270 (if a state court makes

an error of law in resolving a Fourth Amendment claim, such an error by itself does not support a federal habeas court's consideration of the claim).

Nor does Petitioner's arguments that the warrant incorrectly described the informant's adjacent property, rather than Petitioner's property, or that the State never provided Petitioner with a copy of a tape of a conversation between Petitioner and the informant, which disclosure was ordered by the trial court, support federal habeas review of these Fourth Amendment claims. A federal habeas court need not engage in "a probing review of the state court record, either of the factual findings pertaining to the petitioner's search-and-seizure claims or of the application of Fourth Amendment principles to those facts" to determine whether there is a breakdown in the state's procedure. **Willett**, 37 F.3d at 1272.

In the instant case, Petitioner actually presented the state courts with his Fourth Amendment claims in the associate circuit court and circuit court proceedings and during his direct appeal; and those state courts resolved those claims. Because Petitioner has not established that the State failed to afford him a full and fair opportunity to litigate his Fourth Amendment claims, as set forth in grounds one and four, as well as in the supplemental or fifth claim, those claims are not cognizable in this federal habeas proceeding and will be denied without further consideration.

Cognizability - Grounds Three and Four - State Law Issues. In grounds three and four, Petitioner challenges trial court actions in allowing the introduction in rebuttal of evidence of drugs and related items seized from Petitioner's home in December 2003 (both grounds) and in failing to have a hearing on Petitioner's second motion to suppress focusing on the

November 2002 arrest, search, and seizure (ground four).  Respondents urge these grounds for relief present only state law claims that are not cognizable in this federal habeas proceeding.

The record is clear that the trial court allowed in rebuttal evidence of drugs and related items seized from Petitioner's home in December 2003, and did not hold a hearing before denying prior to trial Petitioner's second motion to suppress focusing on the November 2002 arrest, search, and seizure, which motion duplicated an earlier unsuccessful motion to suppress that Petitioner had filed and on which the associate circuit judge had held a hearing before denying it.

A federal habeas court cannot re-examine state court determinations of state-law questions.  **Estelle v. McGuire**, 502 U.S. 62, 67-68 (1991); see **Taylor v. Bowersox**, 329 F.3d 963, 968 (8th Cir. 2003) ("A state's interpretation of its own law is virtually unreviewable by a federal court").  A state trial court's evidentiary rulings are questions of state law.  **Id.**; **Garcia v. Mathes**, 474 F.3d 1014, 1017 (8th Cir. 2007); **Bounds v. Delo**, 151 F.3d 1116, 1119 (8th Cir. 1998).  "'A state court's evidentiary rulings can[, however,] form the basis for federal habeas relief under the due process clause . . . when they were so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process.'" **Bounds**, 151 F.3d at 1119 (quoting Parker v. Bowersox, 94 F.3d 458, 560 (8th Cir. 1996)).  "In making this determination courts must review the totality of the facts in the case pending before them and analyze the fairness of the particular trial under consideration." **Maggitt v. Wyrick**, 533 F.2d 383, 385 (8th Cir. 1976).

Here, assuming the evidence is otherwise inadmissible, the evidence arising out of the

December 2003 discovery of methamphetamine-related materials at Petitioner's residence was admissible under state law due to Petitioner's unequivocal direct testimony that he had never been in possession of methamphetamine, had never intended to manufacture methamphetamine, and had never operated a methamphetamine lab, which testimony supported his argument that the officers conducting the search had planted evidence at his residence. Cf. **State v. Bolds**, 11 S.W.3d 633, 639 (Mo. Ct. App. 1999) ("When a defendant injects an issue into a case, the state may offer[] otherwise inadmissible evidence in order to explain or counteract a negative inference raised by the issue"). Under the circumstances of this case, the admission of that evidence was not so "conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process." **Bounds**, 151 F.3d at 1119 (internal quotation marks omitted).

Similarly, whether or not the trial court properly failed to conduct a hearing on Petitioner's second motion to suppress, which was identical to Petitioner's earlier unsuccessful motion to suppress that had been the subject of a hearing, is a matter of the trial court construing state law requirements regarding motions to suppress, see, e.g., Mo. Rev. Stat. §542.296, rather than a matter of federal constitutional law. Therefore, whether or not the trial court correctly ascertained the need for a second hearing on an essentially duplicate motion to suppress is not cognizable in this federal habeas proceeding. Cf. **Estelle**, 502 U.S. at 67-68 (a federal habeas court cannot re-examine state court determinations of state-law questions); **Taylor**, 329 F.3d at 968 ("A state's interpretation of its own law is virtually unreviewable by a federal court").

-38-

There was no federal constitutional error in the state trial court's rulings now being challenged by Petitioner.  The state law challenges in grounds three and four are not cognizable in this federal habeas proceeding; and those grounds will be denied without further discussion.

Procedural Bar - Grounds Two, Three and Five.  In ground two, Petitioner alleges, in relevant part, that his trial attorney provided ineffective assistance by failing to file a motion to dismiss based on outrageous government conduct and by telling Petitioner outrageous government conduct was not an affirmative defense but an issue the jury would decide.[19]   In ground three, in relevant part, Petitioner bases his claim on prosecutorial misconduct by referring to the "prosecutor t[elling] the jury [Petitioner] was facing trial on unrelated drug charges for items seized subsequent to" the charges relevant to this federal habeas proceeding. (Pet'r Pet. at 9 [Doc. 1 at 8].)  With respect to ground five, Petitioner alleges, in relevant part, a claim of prosecutorial misconduct in that the prosecutor failed to disclose the alleged invalidity of the warrants relevant to the November 2002 arrest of Petitioner and search of his home.  Respondents contend these three claims are procedurally barred.

As to the ineffective assistance of counsel claim in ground two, Respondents argue that claim may not be considered in this federal habeas proceeding because Petitioner did not present it in his post-conviction appeal.

A state prisoner must fairly present each of his claims in each appropriate state court

---

[19]  Respondents acknowledge that Petitioner "litigated the allegedly outrageous government conduct in his motion for post-conviction relief and on appeal." (Resp't Response at 8 [Doc. 13].)  The focus of ground two, however, is on whether Petitioner's trial attorney provided ineffective assistance of counsel by failing to file a motion to dismiss based on the allegedly outrageous government conduct and by telling Petitioner such conduct was not an affirmative defense but an issue for the jury to decide.

-39-

before seeking federal habeas review of the claim.  **Baldwin v. Reese**, 541 U.S. 27, 29 (2004). In Missouri, a post-conviction proceeding is the exclusive procedure for pursuing ineffective assistance of counsel claims in state court, and successive post-conviction motions are not permitted.  Mo. S. Ct. Rule 29.15(a) and (l); **Moore-El v. Luebbers**, 446 F.3d 890, 896 (8th Cir. 2006).  Moreover, the Missouri Supreme Court Rules expressly provide for an appeal from a post-conviction motion court's ruling.  Mo. S. Ct. Rule 29.15(k).  A federal habeas court may be precluded from considering the merits of a claim procedurally defaulted due to a failure to include the claim in a post-conviction appeal.  **Turnage v. Fabian**, 606 F.3d 933, 936, 940-42 (8th Cir. 2010) (not addressing the merits of a federal claim that had not been fairly presented in a brief to the state supreme court after the denial of post-conviction relief); **Storey v. Roper**, 603 F.3d 507, 523-24 (8th Cir. 2010) (not addressing the merits of a claim that the petitioner had not pursued on appeal from the denial of post-conviction relief), cert. denied, 131 S. Ct. 1574 (2011); **Smith v. Jones**, 923 F.2d 588, 589 (8th Cir. 1991) (noting that claims not presented to the Missouri courts, as well as those presented in post-conviction motions "and not appealed are procedurally barred"); **Stokes v. Armontrout**, 851 F.2d 1085, 1092 (8th Cir. 1988) (agreeing that a failure to pursue an "ineffective assistance of trial counsel claim on post-conviction appeal . . . created a procedural bar to federal habeas corpus review of that issue").

The ineffective assistance of counsel claim presented as Petitioner's ground two was not pursued by Petitioner in his post-conviction appeal.  Because Petitioner may not present this ground for relief in a successive post-conviction motion or appeal therefrom, the claim is procedurally defaulted.  **Skillicorn v. Luebbers**, 475 F.3d 965, 976 (8th Cir. 2007) ("Claims

that have not been presented to the state courts, and for which there are no remaining state remedies, are procedurally defaulted"). This Court previously determined that the prosecutorial misconduct claims in grounds three and five are also procedurally defaulted because Petitioner did not present them to the state courts. See footnotes 16 and 17, supra.

Absent a showing of cause and prejudice or a miscarriage of justice, a federal habeas court may not reach the merits of claims procedurally defaulted due to a petitioner's failure to follow applicable state rules in raising the claims in state court. **Sawyer v. Whitley**, 505 U.S. 333, 338 (1992). Therefore, for this Court to address the merits of these three procedurally defaulted claims, Petitioner must show cause and prejudice or a miscarriage of justice for the failure properly to pursue the claims in state court. See **id.**; **Turnage**, supra; and **Storey**, supra.

"'[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" **Greer v. Minnesota**, 493 F.3d 952, 957 (8th Cir. 2007) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)). There is no exhaustive catalog of the objective impediments, nor have the precise contours of the cause requirement been clearly defined. **Ivy v. Caspari**, 173 F.3d 1136, 1140 (8th Cir. 1999).

Petitioner has not shown any cause for his failure properly to present these three claims to the state courts. Because no cause has been established for Petitioner's procedural default, it is unnecessary to consider whether he has demonstrated prejudice. **Abdullah v. Groose**, 75 F.3d 408, 413 (8th Cir. 1996) (en banc).

These defaulted claims for habeas relief may be reached, even in the absence of a

showing of cause and prejudice, if Petitioner establishes that a failure to consider the claims' merits will result in a fundamental miscarriage of justice. "Procedurally barring a claim that establishes actual innocence is considered a fundamental miscarriage of justice." **Cox v. Burger**, 398 F.3d 1025, 1031 (8th Cir. 2005). A showing of actual innocence requires new evidence and a "show[ing] that 'it is more likely than not that no reasonable juror would have convicted him in light of th[at] new evidence.'" **Osborne v. Purkett**, 411 F.3d 911, 920 (8th Cir. 2005) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). "'Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim.'" **Cagle v. Norris**, 474 F.3d 1090, 1099 (8th Cir. 2007) (quoting Schlup, 513 U.S. at 316).

Petitioner does not submit any new evidence of his actual innocence, nor does he allege that such evidence exists.

For the foregoing reasons, the ineffective assistance of trial counsel claim set forth as part of ground two and the prosecutorial misconduct claims in grounds three and five will be denied without further discussion.

Appointment of Counsel. Petitioner recently moved for the appointment of counsel [Doc. 27] and suggested the appointment of counsel [Doc. 28 at 3]. In part, Petitioner urges he has been unsuccessful in attempting to get "public court records from the Circuit Court of Ste. Genevieve County, Missouri . . . that prove Petitioner had no court date" before the police arrived at his home in November 2002 to execute the arrest warrants for his fail to appear. The

Court denied Petitioner's earlier motion for the appointment of counsel [Doc. 2].  <u>See</u> Order, dated September 22, 2008 [Doc. 12].  Respondents have not filed a response to Petitioner's recent efforts to obtain appointed counsel.

With an exception inapplicable here, <u>see</u> 28 U.S.C. § 2261, there is no constitutional or statutory right to the appointment of counsel in habeas corpus proceedings, <u>see</u> **Morris v. Dormire**, 217 F.3d 556, 558 (8th Cir. 2000); "instead, [the appointment of counsel] is committed to the discretion of the trial court," **McCall v. Benson**, 114 F.3d 754, 756 (8th Cir. 1997) (citing <u>Pennsylvania v. Finley</u>, 481 U.S. 551, 555-57 (1987)).  In deciding whether to appoint counsel, the court considers the factual and legal complexity of the case and the petitioner's ability to investigate and articulate his claims.  **Morris**, 217 F.3d at 558-59; **Nachtigall v. Class**, 48 F.3d 1076, 1081-82 (8th Cir. 1995).  Moreover, where the issues involved can be properly resolved without an evidentiary hearing, the court does not abuse its discretion in denying a request for appointment of counsel.  <u>See</u> **Hoggard v. Purkett**, 29 F.3d 469, 471-72 (8th Cir. 1994).

The issues presented in Petitioner's five grounds for relief are neither factually nor legally complex, are articulately and appropriately advocated by Petitioner, and are capable of being resolved without an evidentiary hearing.  Both Petitioner and Respondents have submitted copies of records of the Ste. Genevieve Circuit Court, and Petitioner has not specified what other public court records he has not been able to attain.  Petitioner's requests for the appointment of counsel are, therefore, denied.

## Conclusion

After careful consideration, the Court finds the petition must be denied because each of the five grounds for federal habeas relief either is not cognizable or is procedurally barred.[20] Accordingly,

**IT IS HEREBY ORDERED** that Chris Koster, Attorney General for the State of Missouri is **ADDED** as a party respondent.

**IT IS FURTHER ORDERED** that Petitioner's motion and suggestion for the appointment of counsel [Doc. 27 and Doc. 28 at 3] are **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall retain under seal the following exhibits:  Respondents' Exhibits A at A-1, B at A-1, and Ex. C at 141; Exhibits A through D attached to Petitioner's Supplemental Petition [Doc. 18-2 at 2, 4, 6, and 8].

**IT IS FINALLY ORDERED** that the 28 U.S.C. § 2254 petition of Rodney Allen [Doc. 1] is **DENIED** without further proceedings.

An appropriate Judgment shall accompany this Memorandum and Order.


/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 20th day of September, 2011.

---

[20]  The Court will require the Clerk to maintain under seal the few exhibits that have been filed of record which contain social security numbers:  Respondents' Exhibits A at A-1, B at A-1, and Ex. C at 141, and Exhibits A through D attached to Petitioner's Supplemental Petition [Doc. 18-2 at 2, 4, 6, and 8].  The Clerk has already placed under seal the exhibit attached to Respondents' response to Petitioner's supplemental claim.  See docket entry for Document 26.